UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AUGUSTO DIAZ AGUILAR,<br><br>              Petitioner,<br><br>    v.<br><br>LAURA HERMOSILLO, et al.,<br><br>             Respondents. | CASE NO. 2:26-cv-00537-BAT<br><br>**ORDER GRANTING HABEAS PETITION** |

Petitioner Augusto Diaz Aguilar, a citizen of Guatemala who had been released on his own recognizance, was arrested and detained in the Northwest ICE Processing Center without a pre-deprivation hearing based on being a noncitizen without documentation to remain in the country legally. In a 28 U.S.C. § 2241 petition, he seeks habeas relief because his due process rights were violated. As set forth below, the Court **GRANTS** the habeas petition and, among other provisions, **ORDERS** Respondents to release Petitioner **immediately** from custody and to provide the Court with a declaration confirming his release within **TWENTY-FOUR (24) HOURS** of this order.

**BACKGROUND**

Petitioner, a citizen of Guatemala, entered Arizona from Mexico on August 23, 2022, and was apprehended and detained on entry. Dkt. 9-1, at 2. Because he was a minor when he entered,

ORDER GRANTING HABEAS PETITION - 1

he was processed as an unaccompanied alien child ("UAC"). Dkt. 8, at ¶ 4 (Declaration of Deportation Officer Christopher Hubbard) [hereinafter "Hubbard Decl."]. For several months, Petitioner was held at different shelters for UACs in Texas and Arizona. Hubbard Decl. ¶ 4. In October 2022, Petitioner was released from the shelter into the custody of an uncle living in Oregon under a sponsor care agreement with the requirement to be present at all future hearings. Hubbard Decl. ¶ 5; Dkt. 1-2, at 24. There were no other known conditions of release for Petitioner. Hubbard Decl. ¶ 5. In November 2022, while Petitioner was still a minor, Enforcement and Removal Operations ("ERO") served a Notice to Appear ("NTA") on Petitioner and he was placed in removal proceedings. Hubbard Decl. ¶ 6. However, on June 15, 2023, an Immigration Judge ("IJ") dismissed Petitioner's removal proceedings with the agreement of both the Petitioner and the government under 8 C.F.R. §§ 239.2(a)(7) ("Circumstances of the case have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the government.") and 1239.2(c) ("Motion to dismiss" by "government counsel or an officer enumerated in 8 CFR 239.1(a)"). Hubbard Decl. ¶ 7.

On December 26, 2025, the ICE and ERO Fugitive Operations Teams conducted a large enforcement operation in Portland, Oregon.[1] Hubbard Decl. ¶ 8. During this operation, the officers ran a records check on Petitioner's car and discovered that Petitioner was no longer a UAC under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA").

---

[1] According to Petitioner, this was the same large enforcement operation that led to an injunction on the government "from enforcing their policy or practice of making warrantless civil immigration arrests in the District of Oregon without a pre-arrest individualized determination by the arresting officer of probable cause that the person being arrested is likely to escape before a warrant can be obtained." *M-J-M-A v. Hermosillo*, --- F.3d ---, 2026 WL 562063, at *24 (D. Or. Feb. 27, 2026).

ORDER GRANTING HABEAS PETITION - 2

1 Hubbard Decl. ¶ 8; Dkt. 9-4, at 3. The officers then turned on their emergency lights and siren
2 and stopped Petitioner's vehicle. Dkt. 9-4, at 3. According to the deportation officer, Petitioner
3 "readily admitted that he was a citizen and national of Guatemala and stated he did not possess
4 immigration documents that would allow him to be in or remain in the United States legally." *Id.*
5 It appears that the officers did not create a warrant for Petitioner until after he was arrested,
6 processed, and in custody. Dkt. 9-2, at 2; Dkt. 9-4, at 3–4. The deportation officer noted that
7 when Petitioner was a juvenile, he was served an NTA that was dismissed in 2023. Dkt. 9-4, at 3.
8 According to the deportation officer, citing documents not filed here, Petitioner "was instructed
9 in court at dismissal to seek affirmative asylum with USCIS [United States Citizenship and
10 Immigration Services], but has not done so." *Id.* That is a contested issue. In his February 9,
11 2026, application for asylum, Petitioner states that the application "is my second one to support
12 my motion to reopen." Dkt. 1-2, at 18.

13 There is no dispute that Plaintiff has no criminal record and has never failed to appear for
14 a hearing or otherwise violated any condition of release. Moreover, Respondents acknowledge
15 that Petitioner's vehicle was stopped only because running his plates led to the information that
16 he was an undocumented noncitizen who was no longer a juvenile, and he was arrested upon
17 admitting this to be true.

**DISCUSSION**

19 Respondents do not challenge the Court's jurisdiction. The Court has authority to grant a
20 writ of habeas corpus to an individual who is in custody "in violation of the Constitution or law
21 or treaties of the United States." See 28 U.S.C. § 2241(c)(3). Whether the manner in which an
22 alien was re-detained comported with due process is analyzed pursuant to the three-part standard
23 set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See G.S. v. Hermosillo*, No. C25-2704-

ORDER GRANTING HABEAS PETITION - 3

TSZ, 2026 WL 179962, at *2 (W.D. Wash. Jan. 22, 2026). All three *Mathews* factors weigh in Petitioner's favor: (1) he has a protected liberty interest in not remaining in custody at NWIPC; (2) the absence of pre-deprivation procedures created an unacceptably high risk of erroneous deprivation; and (3) the governmental interest in Petitioner's re-detention without a hearing is minimal or non-existent. *See id.* at *3; *P.T. v. Hermosillo*, No. C25-2249-KKE, 2025 WL 3294988, at *2–4 (W.D. Wash. Nov. 26, 2025); *see also Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *4 (W.D. Wash. Jan. 15, 2026) (noting that any factual disputes related to the justification for a petitioner's re-detention should be resolved at a pre-deprivation hearing, not after-the-fact during habeas proceedings).

In their return, Respondents include boilerplate language concerning expedited removal proceedings, but Petitioner was not in such proceedings prior to his re-detention. Respondents also suggest that Petitioner is now in mandatory custody pursuant to 8 U.S.C. § 1225(b)(2), but such a contention is inconsistent with the jurisprudence of this District. *See, e.g.*, *Cotoc Yac de Yac v. Hermosillo*, No. 25-cv-2593-DGE, 2026 WL 124334, at *2 (W.D. Wash. Jan. 16, 2026) ("8 U.S.C. § 1226(a) is broader than its counterpart [§ 1225(b)] and is the 'default rule' for noncitizens present in the United States who are arrested and placed in immigration detention."); *Mena Torres v. Wamsley*, 807 F. Supp. 3d 1266, 1271 (W.D. Wash. 2025) (§ 1226 "applies to aliens who are already present in the country, but might be removable because they either were inadmissible at the time of entry or have been convicted of one or more statutorily-enumerated criminal offenses"); *see also Bautista v. Santacruz*, --- F. Supp. 3d ---, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026) (vacating *In re Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025)), appeal filed, No. 26-1044 (9th Cir. Feb. 23, 2026).

Respondents argue that Petitioner was not entitled to a pre-deprivation hearing prior to

ORDER GRANTING HABEAS PETITION - 4

1  his arrest because Petitioner's initial removal proceedings had been dismissed at the time of his

2  arrest, he was not under any supervision requirements, and the only condition previously

3  imposed was to appear at hearings. Dkt. 7, at 9–10. That is, Respondents argue that the process

4  due to Petitioner is less than the process due to a noncitizen who was released on an order of

5  release on recognizance ("OREC") during active removal proceedings precisely because the

6  government dismissed removal proceedings against him and released him with no restrictions.

7  The Court rejects Respondents' assertion.

8       First, a necessary corollary to Petitioner's release into the community with no restrictions

9  is that he has never been determined a flight risk or a danger to the community. Second,

10  Petitioner was originally detained and then released as a UAC. The statutory provisions

11  governing the detention of UACs are part of the Homeland Security Act of 2002, as

12  supplemented by the TVPRA. The TVPRA places responsibility for UACs on the Secretary of

13  Health and Human Services ("HHS"). 8 U.S.C. § 1232(b)(1). The statute requires HHS to

14  "promptly" place UACs "in the least restrictive setting that is in the best interest of the child." 8

15  U.S.C. § 1232(c)(2)(A). Prior to his 18th birthday, Petitioner could not have been held in the

16  custody of the Department of Homeland Security. If a UAC reaches the age of 18 and is

17  transferred to the custody of DHS, then DHS must also

> consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight. Such aliens shall be eligible to participate in alternative[s] to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision, which may include placement of the alien with an individual or an organizational sponsor, or in a supervised group home.

8 U.S.C. § 1232(c)(2)(B). Here there is no suggestion whatsoever the government considered

Petitioner's danger to the community or his risk of flight. The officers admittedly detained

ORDER GRANTING HABEAS PETITION - 5

Petitioner because he truthfully explained his current immigration status. Indeed, Respondents offer no valid reason for Petitioner's re-detention or for the disregard of his due process rights. *See G.S.,* 2026 WL 179962, at *3 (indicating that the pre-deprivation hearing required by *Mathews* "serves as a crucial bulwark against the unfettered disregard of individual liberty interests").[2]

## CONCLUSION

For the foregoing reasons, the Court **ORDERS**:

1. Respondents shall immediately release Petitioner from immigration detention **immediately** subject to the same conditions of release that governed before he was re-detained. Respondents shall file a certification within **twenty-four (24) hours** that Petitioner has been released.

2. To amend the conditions of release, Respondents must provide Petitioner at least thirty (30) days' advance written notice and an opportunity to be heard.

3. Respondents shall not re-detain Petitioner without at least seven (7) days' advance written notice and a pre-deprivation hearing before a neutral decisionmaker **unless** detention is statutorily mandatory (which it is not currently). *See Chicoze-Ezechi v. Noem*, 2026 WL 265733, at *2 (W.D. Wash. Feb. 2, 2026) ("Petitioner would be subject to mandatory detention if he committed certain crimes.").

4. At any re-detention hearing, Respondents shall bear the burden to show by clear and

---

[2] To the extent the determination that Respondents violated Petitioner's due process rights by failing to provide him with a pre-deprivation hearing before re-detaining him is contradicted by *Garcia Gabriel v. Hermosillo*, No. C25-2594-DGE-GJL, 2026 WL 194233 (W.D. Wash. Jan 26, 2026), and *Cotoc Yac de Yac*, 2026 WL 124334, the Court declines to follow those cases. The Court prefers the approach taken in *Banegas v. Hermosillo*, No. C26-499-TSZ, 2026 WL 586234 (W.D. Wash. Mar. 2, 2026).

ORDER GRANTING HABEAS PETITION - 6

convincing evidence that Petitioner is a flight risk or a danger to the community.

5. The Court will entertain a motion for attorney fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. Any motion for fees and costs shall be filed by April 13, 2026, and shall be noted under Local Civil Rule 7(d)(3).

DATED this 13th day of March, 2026.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER GRANTING HABEAS PETITION - 7